UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **DRAUGHN KOONCE** | **CIVIL DOCKET NO. 2:23-cv-00702** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **BOYD RACING, LLC, ET AL** | **MAGISTRATE JUDGE THOMAS P. LEBLANC** |

## MEMORANDUM RULING

Before the Court is a MOTION FOR SUMMARY JUDGMENT (the "Motion") filed by Defendant Boyd Racing, LLC, d/b/a Delta Downs Racetrack Casino & Hotel (hereinafter, "Defendant"). [Doc. 34]. An Opposition [Doc. 42] was filed by Plaintiff Draughn Koonce (hereinafter, "Plaintiff"), to which Defendant filed a Reply [Doc. 43]. For the following reasons, Defendant's Motion is DENIED.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant Boyd Racing is the owner and operator of Delta Downs, a horseracing track, which also includes a casino and hotel on its premises. [Doc. 34-7, pp. 9, 65]. On April 14, 2022, Plaintiff arrived at Delta Downs and visited the Gator Grill, a restaurant located onsite. [Doc. 34-4, pp. 34-35]. At the time of his visit, the Tin Lizard Bar & Grill, another restaurant adjacent to the Gator Grill, was in the process of being renovated. [Doc. 34-3, p. 2]; [Doc. 34-7, p. 32]. Defendant hired W.G. Yates & Sons Construction Company (hereinafter, "Yates") to complete the renovation. [Doc. 42-3, pp. 29-70]. To prevent patrons from entering the construction site, a large black plastic tarp was hung from the ceiling to the floor and black stanchions were erected to separate the area around the construction zone from the

Gator Grill. [Doc. 34-7, pp. 27-28, 51]. The stanchions spanned from the tarp to just before the cash register, leaving a narrow opening through which customers could enter the construction zone.[1] [Doc. 34-5]. Importantly, the "pick-up" window where patrons retrieved their food was located on the left, "construction zone," side of the stanchions. *Id.*

Below is an image of the Gator Grill on the date of the incident:



After placing his order, Plaintiff walked through the narrow opening between the stanchion and the counter to retrieve his food from the pick-up window. [Doc. 34-5]. After waiting a brief time, he decided to go back across the stanchions to wait for

---

[1] The Court highlights that it is unclear from the record whether this narrow opening was intentionally created. For example, Defendant's Director of Security, Travis J. Waters, testified that Plaintiff should not have been behind the stanchions, suggesting the gap was not intentional. [Doc. 34-7, p. 69]. Likewise, Defendant's Director of Facilities, Derrick James Chester, testified that the stanchions were placed to prohibit guests from walking in the construction zone. *Id.* at pp. 23-25. However, Mr. Waters also testified that patrons in the construction zone should have waited until the narrow opening was clear and go back out the way they entered. *Id.* at p. 86. And there is also evidence that the Gator Grill was serving customers their food from a serving window located in the construction zone. [Doc. 34-5].

his food at a nearby table. *Id.* However, because there were other customers blocking his pathway through the narrow gap between the stanchion and the restaurant counter, he attempted to go around the stanchion near the black construction tarp. [Doc. 34-4, p. 35]. Finding that there was no way to go around the stanchion on that side, Plaintiff attempted to go under the stanchion to exit the construction area. *Id.* at p. 36. In doing so, he stepped on a piece of the plastic tarp and slipped. *Id.* As a result of Plaintiff's fall, he landed directly on his left knee causing injury.[2] [Doc. 34-4, pp. 35-36].

On April 10, 2023, Plaintiff filed suit against Defendant in the 14th Judicial District Court for Calcasieu Parish, asserting claims under the Louisiana Merchant Liability Act, La. R.S. § 9:2800.6, ("LMLA"). [Doc. 34-3]. On May 26, 2023, Defendant removed the case to this Court pursuant to the Court's diversity jurisdiction. 28 U.S.C. § 1332. [Doc. 1].

In the instant Motion, Defendant seeks summary judgment dismissal of Plaintiff's claims arguing that the condition at Delta Downs did not present an unreasonable risk of harm. [Doc. 34-2, pp. 18-27]. Alternatively, Defendant argues that there is no evidence it failed to exercise reasonable care. *Id.* at pp. 27-29. In response, Plaintiff submits that: (i) there are genuine disputes of material fact as to whether the condition presented an unreasonable risk of harm; (ii) Defendant failed to exercise reasonable care when it violated its own safety policies; and (iii) Defendant

---

[2] Specifically, Plaintiff claims that he stepped on something concealed by the tarp. [Doc. 34-3, p. 2]; [Doc. 34-4, p. 74].

failed to address actual or constructive notice in its Motion. [Doc. 42]. In reply, Defendant recapitulates its prior arguments and moves to strike Plaintiff's expert, Jason T. English. [Doc. 43]. For the purposes of the instant Motion, the focus of the Court's inquiry is: (i) whether the condition at Delta Downs presented an unreasonable risk of harm; and, if so, (ii) whether the Defendant failed to exercise reasonable care.[3]

## LAW AND ANALYSIS

### I. Summary Judgment Standard

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). As such, the party moving for summary judgment bears the burden of demonstrating that there are no genuine disputes of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in

---

[3] The Court need not consider the issues of actual or constructive notice because neither were addressed in Defendant's Motion. Further, the Court denies Defendant's motion to strike Jason T. English as moot because Mr. English's report was not a basis for the Court's ruling on the Motion. To the extent that Defendant wishes to challenge the admissibility of Mr. English's testimony at trial, it may file a *Daubert* motion in line with the Court's Scheduling Order. [Doc. 33].

its favor, including identifying the relevant portions of pleadings and discovery. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant satisfies its burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id, citing Celotex*, 477 U.S. at 323. In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine dispute for trial – and thus a grant of summary judgment is warranted – when the record as a whole "could not lead a rational trier of fact to find for the non-moving party[.]" *Id.*

## II.     Louisiana's Merchant Liability Act

Defendant's liability for Plaintiff's accident and subsequent injury is governed by the LMLA.[4] When a negligence claim is brought against a merchant based on injuries sustained in a fall caused by a condition on the merchant's premises, a plaintiff bears the burden of proving the existence of a hazardous condition and that:

1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

3) The merchant failed to exercise reasonable care.

---

[4]     In a diversity case such as this one, federal courts apply state substantive law. *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 269 (5th Cir. 2009); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

La. R.S. § 9:2800.6(B). Importantly, a plaintiff bears the burden of proof as to each of these three elements. *Melancon v. Popeye's Famous Fried Chicken*, 59 So. 3d 513, 515 (La. App. 3 Cir. 2011), *citing White v. Wal-Mart Stores, Inc.*, 699 So. 2d 1081 (La. 1997).

### A.     *Unreasonable Risk of Harm*

Louisiana courts have adopted a four-part balancing test to determine whether a condition presents an unreasonable risk of harm. *Williams v. Liberty Mutual Fire Insurance Co.*, 217 So. 3d 421, 425 (La. App. 1st Cir. 2017), *writ denied,* 219 So. 3d 338 (La. 2017). This test requires that a court consider: (i) the utility of the complained-of condition; (ii) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (iii) the cost of preventing the harm; and (iv) the "nature of the plaintiff's activities in terms of its social utility or whether it is dangerous by nature." *Temple v. Morgan*, 196 So. 3d 71, 77 (La. App. 1st Cir. 2016), *writ denied*, 208 So. 3d 889 (La. 2016).

After applying these factors – and taking a holistic view of the construction occurring at Delta Downs and the sufficiency of the efforts it took to keep customers away from the construction zone – the Court finds genuine disputes of material fact as to whether the condition of the premises at the time of Plaintiff's fall presented an unreasonable risk of harm.

The Court first acknowledges that the Defendant's use of the tarp and stanchions had social utility because these measures were intentionally employed to keep patrons away from the construction zone. But any utility of these items was greatly diminished because they were wholly ineffective in serving their intended

purpose.[5] *See Farrell v. Circle K Stores, Inc.,* 359 So. 3d 467 (La. 2023) (if a condition "was meant to be there, it often will have social utility."). Instead, a jury could reasonably believe that the configuration of the stanchions – specifically, the gap between the restaurant counter and the stanchions – served as a "gateway" into the construction zone area of the facility, and that customers were prompted to go there to pick up their food. And while the Court certainly credits the Defendant's argument that the dangers posed by the stanchions and tarp were "open and obvious" to the Plaintiff, this is an issue for the jury to decide after considering witness testimony, along with the location, size, and color of the stanchions and tarp.[6] *Bastian v. Rosenthal*, 234 So. 3d 1022, 1028 (La. App. 4th Cir. 2017) (factual discrepancies bearing upon whether a hazard is "open and obvious" should ordinarily be reserved for the finder of fact).

The Court would also note that the cost of preventing the harm would have been minimal. Defendant could have easily repositioned the stanchions to make it clear that customers were not supposed to enter the construction zone. And while the Plaintiff's failed attempt to go under one of the stanchion ropes appears to have been "risky behavior,"[7] the jury might very well determine that his behavior was reasonable under the circumstances. Plaintiff himself testified that there was no

---

[5]     *See* [Doc. 34-5] (in one hour, six patrons entered the construction zone through the narrow opening between the stanchion and counter).

[6]     A condition is "open and obvious" if "the complained upon condition would be apparent to any reasonable person who might encounter it." *Farrell*, 359 So. 3d at 467-68. If a "reasonable person would avoid it, the factor will weigh in favor of finding the condition not unreasonably dangerous." *Id.* at p. 478.

[7]     *See Latour v. Steamboats, LLC*, 371 So. 3d 1026, 1038 (La. 2023).

other way for him to exit the construction zone because the narrow opening between the stanchions and counter was blocked by other patrons placing their orders. [Doc. 34-4, p. 35].

Lastly, and most critical to the Court's ruling on this Motion, the Court again brings attention to the fact that Defendant was effectively inviting patrons into the construction zone by: (i) leaving a narrow walkway through the stanchion next to the restaurant counter; (ii) serving food through the pick-up window on the "construction side" of the stanchion; and (iii) failing to otherwise provide patrons with a safe means of ingress and egress to and from the area in which customers were supposed to retrieve their food. Because reasonable persons could draw different conclusions as to whether the condition of the premises presented an unreasonable risk of harm, the Court is precluded from determining this element as a matter of law and Defendant's Motion is denied on these grounds.

### B.   *Failure to Exercise Reasonable Care*

If a jury determines that the condition of the construction zone presented an unreasonable risk of harm, it next must decide if Defendant exercised reasonable care. "Merchants are required to exercise reasonable care to protect those who enter the premises, and this duty extends to keeping the premises safe from unreasonable risks of harm and warning persons of known dangers." *Moore v. Murphy Oil USA, Inc.,* 186 So. 3d 135, (La. App. 1st Cir. 2015), *writ denied* 191 So. 3d 1066 (La. 2016); *Lavergne v. BJ's Restaurants, Inc.,* 208 So. 3d 918 (La. App. 1st Cir. 2016). This includes a duty to "keep his aisles, passageways, and floors in a reasonably safe condition" keeping in mind that "merchants are not insurers of their patrons' safety,

and customers have concurrent duty to use ordinary care to avoid injury." *Latour v. Steamboats, LLC*, 354 So. 3d 181 (La. App. 3rd Cir. 2022). Additionally, "[w]hether a merchant has a safety policy, whether that policy specifically provides how often employees are to inspect for unsafe conditions, and whether any such policy was violated are relevant questions, the answers of which significantly aid a trial court in determining whether a merchant failed to exercise reasonable care under merchant liability statute." *Blackmun* v. Brookshire Grocery Co., 966 So. 2d 1185 (La. App. 3rd Cir. 2007).

Here, Defendant asserts that it was not responsible for the construction zone or placing any barriers or warnings. [Doc. 43, p. 6]. And there is evidence in the record to support this claim. Defendant's Director of Facilities testified that Yates was responsible for securing the stanchions and the tarp. [Doc. 34-7, p. 51]. The construction contract likewise states that Yates "is the responsible party for the safety of the [p]roject." [Doc. 42-3, p. 69].

But the Plaintiff successfully controverts this assertion. First and foremost, it was the Defendant's premises on which the Plaintiff was an invitee. The construction contract with Yates explicitly states that Defendant "reserves the right" to interpret safety requirements and procedures, declare conditions unsafe, and shut down the project. [Doc. 42-3, p. 69]. The construction contract also provides that Defendant "may correct an unsafe action or condition that is observed at any time" and that "[a]ll employees are required to stop work if an unsafe action or condition is considered serious or life threatening." *Id*. In addition, the record contains Defendant's safety policies that require: (i) aisles and walkways to be kept clear with no obstructions or

hazards; and (ii) the performance of periodic safety inspections. [Doc. 42-3, pp. 8-9, 13]. Moreover, Defendant's Director of Facilities testified that employees should report if patrons enter a construction area and should "ultimately address unsafe actions or conditions on the property." [Doc. 34-7, pp. 27, 42].

As such, there is sufficient evidence in the record for the finder of fact to determine that Defendant failed to exercise reasonable care in complying with its own safety policies and actively monitor the construction zone. Accordingly, summary judgment is also denied on these grounds.

## CONCLUSION

For the foregoing reasons, the Court finds that there are a genuine disputes of material fact that preclude entry of summary judgment. Fed. R. Civ. P. 56.

Accordingly,

IT IS HEREBY ORDERED that Defendant's MOTION FOR SUMMARY JUDGMENT [Doc. 34] is DENIED.

THUS, DONE AND SIGNED in Chambers on this 14th day of March 2025.

*/s/ David C. Joseph*
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE